UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DON SURVI CHISOLM, | ) C/A No. 4:24-6018-BHH-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| WARDEN PALMER, | ) |
| Defendant. | ) |

## **PROCEDURAL BACKGROUND**

Plaintiff, a prisoner proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on October 22, 2024. Plaintiff is currently housed at McCormick Correctional Institution. Plaintiff filed an amended complaint on April 15, 2025. On July 17, 2025, Defendant Palmer filed a motion for summary judgment along with a memorandum and affidavits in support. (ECF No. 46).[2] As the Plaintiff is proceeding *pro se*, the court issued an order on or about July 18, 2025, pursuant to <u>Roseboro v. Garrison</u>, 528

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[2] Defendants James, Smith, Sievert, Unnamed Grievance Coordinator, Williams and Huff and all claims except those regarding religious texts were dismissed by order on January 10, 2025. (ECF No. 17).

F.2d 309 (4th Cir. 1975), advising Plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On August 1, 2025, Plaintiff filed a motion for a thirty-day extension of time to respond to the motion for summary judgment. This motion was granted. (ECF No. 50). Plaintiff failed to file a response.

## RULE 41(B) DISMISSAL

A complaint may be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990), and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

(1) the degree of plaintiff's responsibility in failing to respond;

(2) the amount of prejudice to the defendant;

(3) the history of the plaintiff in proceeding in a dilatory manner; and,

(4) the existence of less drastic sanctions other than dismissal.

Davis v. Williams, 588 F.2d 69 (4th Cir. 1978).

In the present case, the Plaintiff is proceeding pro se so he is entirely

responsible for his actions. It is solely through Plaintiff's neglect, and not that of an attorney, that no responses have been filed to the motion for summary judgment. Plaintiff has not responded to the motion for summary judgment or the court's order requiring him to respond. The undersigned concludes the Plaintiff has abandoned this lawsuit. It appears there are no less drastic sanctions available.

In the alternative, it is recommended that Defendant's motion for summary judgment be granted for the reasons discussed below.

## **STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is

proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## ALLEGATIONS/ARGUMENTS

In the amended complaint, Plaintiff alleges that when he arrived at McCormick Correctional Institution on August 26, 2024, approval was given to possess all of his religious property that he possessed while at Kershaw Correctional Institution. (ECF No. 30). However, Plaintiff alleges that within minutes of the approval, a cellular phone was discovered in his property during an inventory processing. (Id.). Upon being informed of the contraband item discovered in his property, Defendant Warden Palmer informed all relevant parties to confiscate all of the Plaintiff's religious items and to reassign him from Dorm 3 to Dorm 4 which was a more restrictive dorm. (Id.).

On September 9, 2024, Plaintiff alleges he was informed that Defendant Warden Palmer had reconsidered the matter and that Plaintiff would be allowed to maintain possession of all of his religious items, with the exception of his religious book/texts[3] which would need to be discarded or mailed home within ten days. (Id.). On September 17, 2024, Plaintiff asserts that all of his previously confiscated religious items were reissued to him with the exception of his religious texts. (Id.). Plaintiff alleges that from September 18, 2024, until approximately January 18, 2025, he attempted to secure access to Hindu texts either by seeking assistance from the chaplain or be seeking issuance of an inmate tablet with digital copies of Hindu texts. (Id.). Plaintiff alleges that on March 1, 2025, he spoke directly with Defendant Palmer and requested access to some form of Hindu text which he stated would go a long way in helping to resolve the matter. (Id.). On March 5, 2025, Plaintiff states that he was issued an inmate tablet after approximately 180 days without one while typically inmates are issued tablets within two weeks to thirty days after arrival at an institution. (Id.). After being issued the tablet, Plaintiff asserts that he was able to

---

[3] It appears from the amended complaint that the "religious book/texts" Plaintiff refers to is a book of blank pages in which he writes entries of insights, inquires, prayers, etc. (ECF No. 30 at 3). He states in the amended complaint that once he completes the pages in the book, it is given to family for safe keeping. Plaintiff alleges that while at Kershaw Correctional Institution, he ordered a new leather bound book of blank pages on June 11, 2024, and transferred information into it before sending the "older text/book for safe keeping with a family member." (Id. at 3-4).

access Hindu religious texts. (Id.). Plaintiff seeks monetary damages for the practice of his religious rights being hindered. (Id.).

## EXHAUSTION

In the motion for summary judgment, Defendant has raised the affirmative defense of exhaustion. In support of the motion, Defendant submitted the affidavit of Felecia McKie, the Inmate Grievance Coordinator/Branch Chief for the South Carolina Department of Corrections (SCDC). (ECF No. 46-4). In her position, McKie has detailed knowledge of the grievance system and has access to the official grievance records of the Plaintiff maintained by SCDC. Id. The SCDC's grievance system allows inmates to grieve all issues and inmates are made aware of the grievance system through multiple orientations. Id. The grievance system is basically a three-step process. Id. First an inmate must make an effort to informally resolve a grievance by submitting a Request to Staff form (RTSM) or an Automated Request to Staff Member (ARTSM) using the Kiosk to the appropriate supervisor within eight working days of the incident. Id. The Informal Resolution can be satisfied by completing an RTSM at the correctional institution and giving it to staff. Id. ARTSMs are automatically preserved in the kiosk for later retrieval. Id. If an inmate uses an RTSM to attempt informal resolution, he must write out a second copy using the

freely available RTSM forms if he wishes to have a copy for his own records. Id. When an RTSM is filled out by the inmate, it is given to staff. Id. ARTSMs completed using the kiosk are electronically routed to the unit designated within the Requests. Id. The staff member named within the RTSM by the inmate may respond to it or may forward the RTSM to the more appropriate official for response. Id. Staff members are allowed forty-five days to respond to RTSMs or ARTSMs. Id. If the inmate is unsatisfied with the response, the inmate is able to complete a Grievance Form 10-5, Step 1 and is required to include a copy of the answered RTSM that was submitted or a Kiosk reference number where he/she filed an ARTSM. Id. The Step 1 grievance must be completed and placed in the Grievance Box at the institution within eight working days of the RTSM response. Id. After it is turned in by the inmate and retrieved by staff, the Step 1 grievance form will be routed to the institution's IGC. Id. If the IGC determines the grievance cannot be processed due to missing information, documentation or other issues, the IGC will note this on the Step 1 grievance form and return it to the inmate along with the reasons it cannot be processed. Id. Further instructions may be provided in those situations. If an inmate's Step 1 grievance is returned as "Unprocessed," the inmate may either refile a new grievance after correcting any deficiencies noted or can appeal within 10 working days of the grievance being returned to the inmate. Id.  If the inmate is not satisfied

with the Warden's decision, he may appeal that decision by submitting a Step 2 grievance form to the IGC within five days or receipt of the response to the Step 1 grievance. Id. Submission of a Step 2 grievance is the third and last step in the SCDC grievance process and is considered to be SCDC's final decision on the issue. Id. At this point, an inmate's administrative remedies have been exhausted. Id. An inmate is allowed to submit only one issue per incident or circumstances on each grievance form.

    Plaintiff filed a Step 1 grievance, MCCI-0653-24, on December 24, 2024, which claimed upon his arrival at MCI on August 26, 2024, his "religious books" were confiscated and approximately ten days later he was instructed to discard his religious books. (Id.; See Exhibit A to affidavit).[4] The IGC noted that Plaintiff failed to attempt informal resolution in a timely manner by failing to file at RTSM within eight working days of the incident. Id.  Additionally, while the untimely filed RTSM was responded to on November 15, 2024, Plaintiff waited until December 24, 2024, to file his Step 1 grievance. Id. Thus, the filing period was outside the requirement that inmates who are dissatisfied with a response to an ARTSM or RTSM must file a grievance within eight working days of receiving the response. Id. The IGC properly

---

[4] As previously noted, all claims except those regarding religious texts have been summarily dismissed by order of January 10, 2025. (ECF No. 17). However, all of the grievances filed by Plaintiff while at MCI pertaining to religious property were discussed in the affidavit of Feleica McKie and will be set forth for background purposes.

concluded Plaintiff exceeded the established time frame for filing the grievance and returned the grievance to him. Id. McKie attests that the SCDC considers Plaintiff "to not have exhausted his administrative remedies regarding the claim he was improperly forced to discard his religious books." Id. at 3.

On January 26, 2025, Plaintiff filed a Step 1 grievance, MCCI-0074-25, which claimed he had been denied access to Hindu texts, despite attempts to go through the chaplain. Id. Plaintiff also claimed that he had been denied access to a tablet on which to access religious material, and asserted the mental health staff had possession of several copies of a yoga book, *Meditation From the Mat*, which previously belonged to him. Id. Plaintiff sought access to one of these books. Id. The Warden's decision noted Plaintiff's assertions that he was denied access to Hindu texts, his lack of positive results going through the chaplain, and his assertions of lack of access to a tablet. Id. The Warden stated that an inquiry determined that the mental health department did not have a copy of the book he sought, but he was welcome to arrange to purchase religious texts such that they were delivered to the institution directly from a distributor. (Id.; See Exhibit B). Plaintiff filed a timely Step 2 appeal of the Warden's decision of March 24, 2025. The grievance was again denied in a response issued on April 24, 2025. ( Id.; See Exhibit C).

On April 23, 2025, Plaintiff filed a Step 1 grievance, MCCI-0277-25, alleging

he was being denied access to the chapel due to his cell assignment. Id. The Warden's decision noted that the F4 dorm had restricted movement, but he could seek spiritual counseling, religious literature, or other materials through the use of a staff request form. Id. It also noted chaplain assistants visited his housing unit on a weekly basis. (Id.; See Exhibit D). A Step 2 appeal was timely filed on June 9, 2025, but no response had been filed at the time of the affidavit in support of summary judgment dated July 7, 2025. Id.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the

relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Based on the record before the court, Plaintiff has failed to exhaust his administrative remedies. As to the first Step 1 grievance, MCCI-0653-24, filed December 24, 2024, Plaintiff alleged his religious books were confiscated. This Grievance was returned for failure to attempt informal resolution in a timely manner because he failed to file an RTSM within eight working days of the incident. Additionally, when he did file the RTSM, albeit untimely, it was responded to on November 15, 2024, but Plaintiff waited until December 24, 2024, to file his Step 1 grievance. As stated in McKie's affidavit, an inmate who is dissatisfied with a response to an ARTSM or RTSM must file a grievance within eight working days of

receiving the response. Therefore, the Step 1 grievance, MMCI -0653-24, was untimely. Additionally, there is no indication that Plaintiff appealed the Step 1 decision. Therefore, Plaintiff failed to properly exhaust the allegations raised in this grievance.

As to religious texts, Plaintiff filed a Step 1 grievance, MCCI-0074-25, on January 29, 2025, alleging he had been denied access to Hindu texts despite attempts to go through the chaplain, had been denied access to a tablet to access religious material, and that the mental health staff had possession of several copies of a yoga book, *Meditation From the Mat*, which previously belonged to him. The Warden denied the Step 1 grievance, and Plaintiff filed a Step 2 grievance on March 24, 2025. The Step 2 grievance was denied in a response issued on April 24, 2025. However, the Step 1 grievance was filed over three months after the date the complaint was filed in this action. Therefore, Plaintiff failed to properly exhaust his administrative remedies with regard to issues pertaining to religious texts prior to filing this action. Further, Plaintiff filed another Step 1 grievance on April 23, 2025, MCCI-0277-25, asserting he was denied access to the chapel due to his cell assignment. Again, this grievance was filed subsequent to the filing of this action.

The Prison Litigation Reform Act of 1995 (PLRA) requires that "prisoners ... exhaust such administrative remedies as are available prior to filing suit in federal

court." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (quoting 42 U.S.C. § 1997(e)(a)). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "[A] prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively." Moore, 517 F.3d at 725. Based on the evidence, it is clear that Plaintiff filed his case prematurely before he fully exhausted the administrative remedy process. Further, Plaintiff's filing of an amended complaint does not change the date by which he had to exhaust his administrative remedies. See McElrath v. Anderson Cnty. Det. Ctr., No. CV 5:23-133-BHH-KDW, 2023 WL 2898939, at *2 (D.S.C. Mar. 17, 2023), report and recommendation adopted, No. 5:23-CV-133-BHH, 2023 WL 2898620 (D.S.C. Apr. 11, 2023) quoting Drayton v. Cohen, C/A No. 2:10-3171-TMC, 2012 WL 666839, at *2 n.3 (D.S.C. Feb. 29, 2012) ("[I]f the PLRA meant only that prisoners had to exhaust administrative remedies before filing an amended complaint, they would have no incentive to exhaust those remedies prior to filing suit. The prisoners could complete the grievance process while suit was pending, avoiding dismissal by later amending their complaint. This would defeat the very purpose of the PLRA exhaustion requirement ..."). Because Plaintiff

failed to diligently and properly follow the administrative procedures with respect to the issues raised herein, dismissal of this action for failure to exhaust administrative remedies is appropriate.

## **CONCLUSION**

Based on the above reasoning, it is RECOMMENDED that this action be dismissed for failure to prosecute pursuant to Fed. R. Civ. Proc. 41(b) with prejudice, and Defendant's motion for summary judgment be rendered moot.

In the alternative, it is RECOMMENDED that Defendant's motion for summary judgment (ECF No. 46) be granted for failure to exhaust administrative remedies.

Respectfully submitted,

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

September 23, 2025  
Florence, South Carolina

The parties' attention is directed to the important information on the attached notice.